UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD LAWRENCE,<br><br>    Plaintiff,<br><br>  v.<br><br>IMMUNOGEN, INC., STEPHEN C. MCCLUSKI, STUART A. ARBUCKLE, MARK J. ENYEDY, MARK A. GOLDBERG, TRACEY L. MCCAIN, DEAN J. MITCHELL, KRISTINE PETERSON, HELEN THACKRAY, and RICHARD J. WALLACE,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Richard Lawrence ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Immunogen, Inc. ("Immunogen" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by AbbVie Inc. ("AbbVie").[1]

2. On November 30, 2023, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with AbbVie, AbbVie's wholly owned subsidiary Athene

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Subsidiary LLC ("Intermediate Sub"), and Intermediate Sub's wholly owned subsidiary Athene Merger Sub Inc. ("Purchaser"). The Merger Agreement provides that Immunogen stockholders will receive $31.26 in cash per share of Company common stock outstanding.

3. The Company's corporate directors subsequently authorized the January 2, 2024, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

---

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for January 31, 2024.

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Immunogen's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Immunogen common stock.

10.     Defendant Immunogen is a Massachusetts corporation with its principal executive offices located at 830 Winter Street, Waltham, Massachusetts 02451. ImmunoGen's shares trade on the Nasdaq Global Select Market under the ticker symbol "IMGN." ImmunoGen is a commercial-stage biotechnology company focused on developing and commercializing antibody-drug conjugates ("ADCs") for cancer patients. The Company's portfolio includes (i) ELAHERE (mirvetuximab soravtansine), an ADC targeting folate-receptor alpha ("FRα"), for the treatment of platinum-resistant ovarian cancer which received accelerated approval from the U.S. Food and Drug Administration on November 14, 2022, for the treatment of adult patients with FRα positive, platinum-resistant epithelial ovarian, fallopian tube, or primary peritoneal cancer, who have received one to three prior systemic treatment

regimens; (ii) Pivekimab sunirine, a CD123-targeting ADC that is in Phase II clinical trials for treating acute myeloid leukemia and blastic plasmacytoid dendritic cell neoplasm; (iii) IMGC936, an ADC designed to target ADAM9, an enzyme over-expressed in a range of solid tumors and implicated in tumor progression and metastasis in co-development with MacroGenics, Inc. that is in a Phase I clinical trial; and (iv) IMGN151, an anti-FRα product candidate that is in a Phase I clinical trial for patients with recurrent endometrial cancer and recurrent, high-grade serous epithelial ovarian, primary peritoneal, or fallopian tube cancers.

11. Defendant Stephen C. McCluski has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Stuart A. Arbuckle is and has been a director of the Company at all times relevant hereto.

13. Defendant Mark J. Enyedy is and has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

14. Defendant Mark A. Goldberg is and has been a director of the Company at all times relevant hereto.

15. Defendant Tracey L. McCain is and has been a director of the Company at all times relevant hereto.

16. Defendant Dean J. Mitchell is and has been a director of the Company at all times relevant hereto.

17. Defendant Kristine Peterson is and has been a director of the Company at all times relevant hereto.

18. Defendant Helen Thackray is and has been a director of the Company at all times relevant hereto.

19. Defendant Richard J. Wallace is and has been a director of the Company at all times relevant hereto.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21. On November 30, 2023, AbbVie and the Company jointly announced in relevant part:

> NORTH CHICAGO, Ill., and WALTHAM, Mass., Nov. 30, 2023 /PRNewswire/ -- AbbVie Inc. (NYSE: ABBV) and ImmunoGen, Inc. (NASDAQ: IMGN) today announced a definitive agreement under which AbbVie will acquire ImmunoGen, and its flagship cancer therapy ELAHERE® (mirvetuximab soravtansine-gynx), a first-in-class antibody-drug conjugate (ADC) approved for platinum-resistant ovarian cancer (PROC). The acquisition accelerates AbbVie's commercial and clinical presence in the solid tumor space. Additionally, ImmunoGen's follow-on pipeline of promising next-generation ADCs further complements AbbVie's ADC platform and existing programs.
>
> Under the terms of the transaction, AbbVie will acquire all outstanding shares of ImmunoGen for $31.26 per share in cash. The transaction values ImmunoGen at a total equity value of approximately $10.1 billion. The boards of directors of both companies have approved the transaction. This transaction is expected to close in the middle of 2024, subject to ImmunoGen shareholder approval, regulatory approvals, and other customary closing conditions.
>
> "The acquisition of ImmunoGen demonstrates our commitment to deliver on our long-term growth strategy and enables AbbVie to further diversify our oncology pipeline across solid tumors and hematologic malignancies," said Richard A. Gonzalez, chairman and chief executive officer, AbbVie. "Together, AbbVie and ImmunoGen have the potential to transform the standard of care for people living with cancer."
>
> ImmunoGen's oncology portfolio has the potential to help drive long-term revenue growth for AbbVie's oncology franchise. Ovarian cancer is the leading cause of death from gynecological cancers in the U.S. ELAHERE is the first targeted medicine to show meaningful survival benefit in PROC. As a fast-growing solid tumor therapy, ELAHERE provides AbbVie with a potential

multi-billion-dollar on-market medicine with expansion opportunities in earlier lines of therapy and larger segments of the ovarian cancer market.

"With global commercial infrastructure and deep clinical and regulatory expertise, AbbVie is the right company to accelerate geographic and label expansion, and realize the full potential of ELAHERE as the first and only ADC approved in ovarian cancer," said Mark Enyedy, president and chief executive officer, ImmunoGen. "The addition of ImmunoGen's pipeline, platform, and expertise to AbbVie's oncology portfolio is an exciting opportunity for the combined companies to advance innovation in ADCs. This transaction is the culmination of our 40-year commitment to develop and deliver the next-generation of ADCs and more good days for people living with cancer."

ELAHERE is a first-in-class ADC targeting folate receptor alpha (FRα) with a maytansinoid payload DM4, a potent tubulin inhibitor designed to kill the targeted cancer cells. ELAHERE received U.S. Food and Drug Administration (FDA) accelerated approval in 2022 for the treatment of adult patients with FRα positive, platinum-resistant epithelial ovarian, fallopian tube, or primary peritoneal cancer, who have received one to three prior systemic treatment regimens. The positive Phase 3 results from the MIRASOL confirmatory trial will support a Marketing Authorization Application (MAA) to the European Union and a supplemental Biologic License Application (sBLA) submission to the U.S. FDA in order to gain full approval. Ongoing clinical development programs are underway to expand into earlier lines of therapy and enter other large patient segments of the ovarian market over the next 5-10 years.

ImmunoGen's follow-on pipeline of promising next-generation ADCs expands AbbVie's growing oncology pipeline of potentially transformative programs across multiple different solid tumors and hematologic malignancies. ImmunoGen's Phase 1 asset, IMGN-151, is a next-generation anti-FRα ADC for ovarian cancer with the potential for expansion into other solid tumor indications. Pivekimab sunirine, currently in Phase 2, is an anti-CD123 ADC targeting blastic plasmacytoid dendritic cell neoplasm (BPDCN), a rare blood cancer, which was granted FDA breakthrough therapy designation for the treatment of relapsed/refractory BPDCN.

**Transaction Terms**

AbbVie will acquire all outstanding ImmunoGen common stock for $31.26 per share in cash. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by ImmunoGen stockholders. The proposed transaction is expected to be accretive to diluted earnings per share (EPS) beginning in 2027.

* * *

**Advisors**

AbbVie's lead financial advisor is J.P. Morgan Securities LLC, which has delivered a fairness opinion for the transaction and Wachtell, Lipton, Rosen & Katz is serving as legal advisor.  Morgan Stanley & Co. LLC is also serving as a financial advisor to AbbVie.

ImmunoGen's financial advisors are Goldman Sachs & Co. LLC and Lazard, and Ropes & Gray LLP is serving as legal advisor.

**The Materially Incomplete and Misleading Proxy Statement**

22.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on January 2, 2024.  The Proxy Statement, which recommends that Immunogen stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Immunogen; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisors Goldman Sachs & Co. LLC ("Goldman") and Lazard Frères & Co. LLC ("Lazard"); and (c) potential conflicts of interest faced by Lazard and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for the Company*

23.     The Proxy Statement fails to disclose material information concerning the financial forecasts for Immunogen, including the Company's non-risk-adjusted projections or a quantification of the risk-adjustments, including with respect to "the probability of license fees and milestone amounts payable by and to the Company based on the terms of the

Company's existing and forecast terms of future potential partner relationships." [3]  Proxy Statement at 51.

24. The Proxy Statement also fails to disclose all line items underlying the Company's forecasted: (a) Total Revenue; (b) Gross Profit; and (c) EBIT.

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Performed by Goldman and Lazard*

25. The Proxy Statement fails to disclose material information concerning the financial analyses performed by Goldman and Lazard.

26. With respect to the *Illustrative Discounted Cash Flow Analysis* performed by Goldman, the Proxy Statement fails to disclose: (a) the terminal year estimate of unlevered free cash flow; (b) the Company's terminal values; (c) the benefits estimated by ImmunoGen's management to be derived by ImmunoGen from its utilization of net operating loss carryforward and other tax credit; (d) the estimated net cash of ImmunoGen as of September 30, 2023; and (e) the Company's fully diluted outstanding shares.

27. With respect to the *Premia Paid Analysis* performed by Goldman, the Proxy Statement fails to disclose the transactions analyzed and their respective premiums.

28. With respect to the *Discounted Cash Flow Analysis* performed by Lazard, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) the estimated net

---

[3] *See* Proxy Statement at 51. The Proxy Statement further fails to disclose the assumptions underlying the Company's projections, including with respect to "product sales; license fees and milestone payments; cost of goods sold expenses; research and development expenses; selling, general, and administrative expenses; . . . effective tax rate; utilization of net operating losses and tax credits; and other relevant factors related to projecting potential Company long-range operating performances." *Id.*

cash of the Company on September 30, 2023; and c) the Company's fully diluted outstanding shares.

29. With respect to the *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis*, each performed by Lazard, the Proxy Statement fails to disclose the respective individual financial metrics for each of the selected companies and transactions analyzed by the financial advisor.

30. With respect to the *Premia Paid Analysis*, performed by Lazard, the Proxy Statement fails to disclose the transactions analyzed and their respective premiums.

31. With respect to the *Research Analyst Price Targets* analysis performed by Lazard, the Proxy Statement fails to disclose the individual price targets observed and their respective sources.

*Material Misrepresentations and/or Omissions Concerning Lazard's and Company Insiders' Potential Conflicts of Interest*

32. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Lazard.

33. For example, the Proxy Statement sets forth, "Lazard in the past has provided certain investment banking services for ImmunoGen for which Lazard has received compensation, including in connection with the collaboration with Hangzhou Zhongmei Huadong Pharmaceutical Co., Ltd., which was announced in 2020."[4] Yet, the Proxy Statement fails to disclose the compensation Lazard received from the Company for providing such investment banking services. The Proxy Statement further fails to disclose whether Lazard has

---

[4] *Id.* at 50.

provided any services to AbbVie in the prior two-year period, and any related compensation received.

34. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

35. Specifically, the Proxy Statement fails to disclose whether any of AbbVie's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

36. The Proxy Statement further fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between ImmunoGen directors and officers and AbbVie.

37. The omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Goldman Sachs," "Opinion of Lazard," "Background of the Merger," and "Interests of ImmunoGen's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

38. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Immunogen**

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Immunogen is liable as the issuer of these statements.

41. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

42. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

44. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

45. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Immunogen within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Immunogen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations

as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

51. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

13

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 11, 2024       **ACOCELLI LAW, PLLC**

               By: */s/ Richard A. Acocelli*
                  Richard A. Acocelli
                  33 Flying Point Road, Suite 131
OF COUNSEL:           Southampton, NY 11968
                  Telephone: (631) 204-6187
**LONG LAW, LLC**         Email: racocelli@acocellilaw.com
Brian D. Long
3828 Kennett Pike, Suite 208     *Attorneys for Plaintiff*
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com